USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  1/28/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                         :

   UNITED STATES OF AMERICA,        :

                                           :

              -v-                       :                      1:16-cr-691-GHW

                                           :

   DASHAWN HAWKINS,              :                          ORDER

                                           :

                       Defendant.   :

                                           :

------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

       Defendant Dashawn Hawkins sold heroin laced with fentanyl to Colin Cameron.  Mr.

Cameron died of an overdose after using the drugs sold to him by Mr. Hawkins.  The Court

sentenced Mr. Hawkins principally to 252 months of imprisonment for his crime.  As part of his

sentence, the Court ordered Mr. Hawkins to pay the victims of his offense $17,219.84 in restitution.

The Court also ordered Mr. Hawkins to forfeit $14,681 in cash seized from him at the time of his

arrest.  In a motion styled as having been brought under Rule 41(g) of the Federal Rules of Criminal

Procedure, Mr. Hawkins asks for the Court to order that the forfeited cash be returned to him.

Because the Court ordered that the money be forfeited in his judgment of conviction, Mr. Hawkins'

application is denied.

       **I.**       **BACKGROUND**

            **a.**   **Factual Background**

       On September 2, 2016, the New York City police department (the "NYPD") responded to

the apartment of Colin Cameron.  Presentence Report, Dkt. No. 58, at 6.  He was pronounced dead

at the scene, and was found to have died from an overdose of heroin and fentanyl.  *Id.*  The NYPD

discovered that Mr. Cameron purchased heroin from Mr. Hawkins.  *Id.*  On October 20, 2016, the

NYPD executed a search warrant at Mr. Hawkins' apartment.  *Id.* at 7.  During the search, officers

found, among other things:  $14,681 in cash; a drug stash that included plastic bags filled with over

100 grams of heroin and cutting agents, smaller "twists" of heroin and fentanyl, cocaine,

methamphetamine; a scale with heroin and cocaine residue; and a gun case containing a 9mm short-

barreled rifle with a destroyed serial number and two loaded magazines.  *Id.*

The grand jury first indicted Mr. Hawkins on October 19, 2016.  Dkt. No. 2.  The grand jury

returned a superseding indictment on December 19, 2016.  Dkt. No. 11.  The superseding

indictment charged Mr. Hawkins with four counts:  Count One charged him with the distribution of

controlled substances, which resulted in the death of Mr. Cameron, in violation of 21 U.S.C. §§ 812,

841(a)(1), and 841(b)(1)(C); Count Two charged him with conspiracy to distribute 100 grams and

more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C.

§ 846; Count Three charged him with the possession of a short-barreled rifle in furtherance of a

drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(B)(i); and Count

Four charged him as a felon in possession of a weapon in violation of 18 U.S.C. § 922(g)(1).  The

indictment contained a forfeiture allegation with respect to Count One of the indictment pursuant

to 21 U.S.C. § 853.

Mr. Hawkins pleaded guilty to Count One of the superseding indictment on July 14, 2017.

Dkt. No. 30 at 22:22–23:4.  As part of his plea, Mr. Hawkins specifically admitted to the forfeiture

allegations contained in the indictment with respect to Count One.  *Id.* at 23:5–9.

The Court sentenced Mr. Hawkins on January 24, 2018.  The Court principally sentenced

Mr. Hawkins to 252 months imprisonment.  Dkt. No. 56 ("Tr."), at 68:2–3.  As part of the sentence,

the Court also ordered that Mr. Hawkins forfeit the $14,681 in cash seized from his apartment as

proceeds of the offense.  Tr. at 71:4–11.

Because Mr. Hawkins' motion seems to be predicated upon a misunderstanding of the

nature of the forfeiture ordered by the Court as part of the judgment, it is worthwhile to set out

portions of the discussion of forfeiture during the sentencing proceeding here at some length.  As

Mr. Hawkins' motion and reply point out, early in the sentencing proceeding, counsel for the United

States misspoke with respect to whether it was requesting forfeiture.  The remark was first made

during a discussion of the parties' objections to the PSR:

> THE COURT:  Thank you.  Do you have any objections related to the factual
> accuracy of the presentence report?
>
> MR. SWERGOLD (Counsel for the United States):  No, your Honor.  There is just
> one typo that I noticed in it that the Court may wish to correct, though I don't think
> it's a significant issue.  Paragraph 108, which includes a forfeiture number—
>
> THE COURT:  Thank you. That's the 6 and the 4?
>
> MR. SWERGOLD:  Yes, that's right.
>
> THE COURT:  Thank you.  I saw that.
>
> MR. SWERGOLD:  OK.  Again, the government is actually not seeking forfeiture
> here because the forfeiture allegation is tied only to Count One.  We instead are
> seeking restitution, and I've handed up a restitution order, and we think that the
> money that was seized can [validly] go towards paying that restitution amount.
>
> THE COURT:  Thank you very much.  With respect to paragraph 108, I too noticed
> that there's a transposition of the 4 and the 6 in that paragraph, so I believe that the
> second clause in the sentence contained in that paragraph should refer to $14,681. Is
> that correct, Mr. Swergold?
>
> MR. SWERGOLD:  Yes, that's correct, your Honor.

Tr. at 10:13–11:8.

As a result, the Court modified the amount of the forfeiture described in paragraph 108 of

the presentence report, so that the paragraph would read in full as follows:  "As a result of

committing the offense charged in Count 1 of the Superseding Indictment, the defendant shall

forfeit to the United States, pursuant to 21 USC § 853, any and all property constituting and derived

from any proceeds the defendant obtained directly or indirectly as a result of the offense, to include

$14,681.00 *traceable to the offense* and seized from the defendant at the time of his arrest."  Tr. at 19:2–

3 (emphasis added).  Neither party objected to the factual statements in the presentence report,

which incorporated their comments.

Later during the sentencing hearing, after imposing a term of incarceration and supervised

release, the Court engaged in the following colloquy with counsel for the United States:

THE COURT:  Mr. Swergold, I understand from your comments earlier that the government is not seeking forfeiture.  Is that correct?

MR. SWERGOLD:  That's correct, your Honor.

THE COURT:  Thank you.  I have been handed a proposed order of restitution, which I am now executing.  I am ordering that the defendant make restitution payable to the Clerk, U.S. District Court, for disbursement to the people identified in the schedule of victims, in the amount of $17,219.84.  Mr. Swergold, my understanding is that the cash seized will be applied toward this restitution amount?  Is that correct?

MR. SWERGOLD:  I actually don't know that.  Your Honor, we can certainly find ways to administratively forfeit that money.  I have reached out to defense counsel to propose—to see whether they would consent that that money go towards the restitution, but I never heard back.

THE COURT:  Thank you.  Ms. Gatto?

MS. GATTO (Counsel for Defendant):  There is no objection.

THE COURT:  Thank you.  Shall I order its forfeiture, Mr. Swergold?

MR. SWERGOLD:  Yes, your Honor.  I think that's appropriate.

THE COURT:  Thank you.  So I am ordering that the defendant forfeit to the United States any and all property constituting or derived from any proceeds that the defendant obtained, directly or indirectly, as a result of the offense, to include $14,681 traceable to the offense and that was seized from the defendant at the time of his arrest.  I understand that the United States will work to make that amount available to satisfy the defendant's restitution award.

Tr. at 70:4–71:11.

To recap:  At the beginning of this colloquy, counsel for the United States said that the

Government was not seeking forfeiture.  But when the Court inquired later regarding whether the

Government wished for the Court to order the forfeiture of the seized cash, the Government

answered in the affirmative.  As a result, the Court included an order of forfeiture in its sentence

with respect to the $14,681 found in Mr. Hawkins' apartment *in addition to* the separate order of

forfeiture for $17,219.84. The Court stated that it was the Court's understanding that the United

States would work to make the forfeiture amount available to satisfy the defendant's restitution

award, but the Court did not limit the forfeiture award so that it could only be used in that way.

And the Government did not commit to do so. To the contrary, counsel for the United States said

that he did not know if the forfeiture amount could be paid to Mr. Hawkins' victims.

 The judgment entered on January 29, 2018 included the Court-ordered forfeiture: "The

defendant shall forfeit to the United States any and all property constituting and derived from any

proceeds the defendant obtained directly or indirectly as a result of the offense, to include $14,681

traceable to the offense and seized from the defendant at the time of his arrest." Dkt. No. 53 (the

"Judgment") at 7. The Judgment also included a separate mandate for the defendant to pay the

victims of his offense $17,219.84. Judgment at 6. Mr. Hawkins did not appeal his conviction and

sentence.

 Following Mr. Hawkins' sentencing, the United States published notice of the forfeiture on a

government website. Dkt. No. 74. The United States was not aware of any person with an interest

in the property other than the defendant. No one claimed an interest in the forfeited property. So

the United States requested that the Court enter a final order of forfeiture with respect to the

forfeited cash  The Court entered a final order of forfeiture on January 8, 2019. Dkt. No. 75. In

that final order of forfeiture, the Court ordered that all right, title, and interest in the $14,681 seized

from Mr. Hawkins "is hereby forfeited and vested in the United States, and shall be disposed of

according to law." *Id.*

### b. Mr. Hawkins' Motion

 Mr. Hawkins filed a motion *pro se* on April 6, 2020. Dkt. No. 102 (the "Motion"). The

motion is styled as one brought under Federal Rule of Criminal Procedure 41(g). In his motion, Mr.

Hawkins asks that the Court return the $14,681 in cash that was seized from his apartment.  He

claims that it was "hard earned U.S. currency that had never been involved in any illegal transactions,

nor unlawful activities."  Motion at 1.  Mr. Hawkins argues that he "is presently being deprived of

his U.S. currency by the government, whom [sic] really has no reason to continue to hold his U.S.

currency.  Because his case is finalized and completed."  *Id.*  In his motion, Mr. Hawkins argues that

he "never recovered any formal notice of the illegal seizure from the government," which he claims

to have violated his due process rights.

Mr. Hawkins' motion also rests on a misunderstanding of the Court's judgment.  Mr.

Hawkins states:

> Furthermore, the court has made clear that it was issuing a forfeiture order solely for
> the purpose of applying it towards the restitution. . . .  However, none of the $14,681
> has been applied to the restitution as ordered by the Court . . . .  Hawkins' financial
> statement issued by the B.O.P. states that Hawkins owes approximately $17,000.
> Hawkins therefore request[s] this court to return the forfeited amount of $14,681.00
> if it was not applied towards the restitution or issue an amended order reflecting the
> $14,681 forfeited had actually gone towards the restitution.

*Id.*

The United States responded to the Motion on April 20, 2020.  Dkt. No. 105 (the

"Opposition").  The Opposition recites some of the facts from Mr. Hawkins' arrest and conviction.

It includes photographs of the rubber-banded stacks of cash found in Mr. Hawkins' apartment,

where he also stowed drugs and a firearm and ammunition.  The Opposition points out that in his

pre-sentence interview, Mr. Hawkins told the probation department that the entity that Mr.

Hawkins' motion identified as the source of his bundles of cash "was not making any money for

profit at the time of his arrest."  Opposition at 4.

The Opposition also explains the efforts undertaken by the United States to apply some of

the funds seized to help the victims of Mr. Hawkins' crime.

> Consistent with the representations made during sentencing, the Government took
> the necessary steps to petition the Department of Justice to restore the Seized Cash,

which had been forfeited, to satisfy part of the restitution order.  On September 20, 2019, the Government was notified by the Money Laundering and Asset Recovery Section of the Department of Justice that the restoration request was denied because (i) funeral and burial expenses do not qualify as pecuniary losses under 28 C.F.R. § 9.8, (ii) the victim's parents do not meet the definition of victims under 28 C.F.R. § 9.2, and (iii) the victim's estate could not petition for remission because drug users are not considered victims under 28 C.F.R. § 9.2.

*Id.* at 5.

Mr. Hawkins filed his reply May 15, 2020.  Dkt. No. 106 (the "Reply").  In his reply, Mr. Hawkins argues that he understood that the Government had agreed that the forfeited cash would be applied toward his restitution obligations.  "If the Government does not have to abide by its agreements, neither does the defendant.  What is good for the goose is good for the gander.  The victim's parents should not suffer because of the Government's fraud."  *Id.* at 4.

## II.      ANALYSIS

Because Mr. Hawkins is proceeding *pro se*, the Court must construe each of his submissions "liberally to raise the strongest arguments it suggests."  *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed[.]'").  Even under this forgiving standard, Mr. Hawkins' motion lacks merit.  While formulated as a motion under Federal Rule of Criminal Procedure 41(g), it amounts to a collateral attack on his conviction and sentence because the Court specifically ordered the forfeiture of the cash that he now claims as part of Mr. Hawkins' sentence.

Mr. Hawkins brings this motion under Federal Rule of Criminal Procedure 41(g).  That rule reads as follows:

> (g) Motion to Return Property.  A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.  The motion must be filed in the district where the property was seized.  The court must receive evidence on any factual issue necessary to decide the motion.  If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later

proceedings.

Fed. R. Crim. P. 41.  The Government's opposition responds to Mr. Hawkins on the premise that

Rule 41(g) applies here.  The United States notes that "[t]o succeed on a Rule 41(g) motion, the

moving party 'must demonstrate that (1) he is entitled to lawful possession of the seized property;

(2) the property is not contraband; and (3) either the seizure was illegal or the government's need for

the property as evidence has ended.'"  Opposition at 4 (quoting *Ferreira v. United States*, 354 F. Supp.

2d 406, 409 (S.D.N.Y. 2005)).  The Opposition goes on to argue that because Mr. Hawkins is not

entitled to lawful possession of the seized property, as a result of the Court's forfeiture order, the

motion should be denied.

      The Court agrees with the conclusion suggested by the United States and the ultimate

rationale.  However, the Court pauses to observe that a motion under Rule 41(g) is not the proper

vehicle for the requested relief at this stage of the case.  The Second Circuit wrote the following

regarding Rule 41(e)—the predecessor to the current Rule 41(g):

> After the case is concluded, a property owner may have other rights under statutory
> or common law for return of property wrongfully seized, but he has no such right
> under rule 41(e) after conviction. . . .  Where criminal proceedings against the
> movant have already been completed, a district court should treat a rule 41(e) motion
> as a civil complaint.

*Onwubiko v. United States*, 969 F.2d 1392, 1396–97 (2d Cir. 1992), *overruled on other grounds by Polanco v.*

*U.S. Drug Enforcement Admin.*, 158 F.3d 647, 651 (2d Cir. 1998); *see also Toure v. United States*, 24 F.3d

444, 445 (2d Cir. 1994) ("We note that Toure's complaint, seeking a return of seized property after

the conclusion of the underlying criminal case, is properly treated as commencing a civil action

pursuant to 28 U.S.C. § 1346, rather than as a motion pursuant to Fed. R. Crim. P. Rule 41(e).");

*United States v. Giovanelli*, 998 F.2d 116, 118–19 (2d Cir. 1993).

      Regardless of the proper procedural vehicle for Mr. Hawkins' motion, it has no merit.  At

the outset, Mr. Hawkins admitted to the forfeiture allegations against him in the indictment pursuant

to 21 U.S.C. § 853.  During the sentencing proceeding, the parties discussed, and the Court adopted

without objection, the factual recitations in the presentence report.  The presentence report included

a statement regarding the forfeiture amount, and described the cash seized in Mr. Hawkins'

apartment as "traceable to the offense."  The Court specifically ordered the forfeiture of the cash

seized in his apartment at sentencing, and included that order of forfeiture in the judgment of

conviction.  Mr. Hawkins did not object to the factual predicate for the forfeiture order (or any

other aspect of his sentence) at the time of sentencing, and he never filed an appeal.  It is simply not

true that Mr. Hawkins did not have notice of the forfeiture:  forfeiture of the cash at issue here was

ordered at Mr. Hawkins' sentencing.  Mr. Hawkins had ample opportunity to object to the Court's

order and the factual predicate for it.

The Court can understand Mr. Hawkins' misunderstanding regarding the expected

application of the forfeiture amount, given the statements by the United States at sentencing to the

effect that the Government was not seeking forfeiture.  But a careful reading makes clear what the

Court understands now and understood at the time—namely, that the Government's early

comments to the effect that the Government was not seeking forfeiture in the case were simple

mistakes—mistakes that were corrected on the record during the course of the sentencing.  As

noted above, the indictment contained a forfeiture allegation with respect to Count One and Mr.

Hawkins admitted to it at sentencing.  The presentence report contained a description of the

appropriate forfeiture amount, which the parties discussed during the sentencing hearing.  As a

result, the Court understood that the United States would request forfeiture in the case.  And, after

prompting by the Court, it did.  Tr. at 70:24–71:2  ("THE COURT:  Shall I order its forfeiture, Mr.

Swergold?  MR. SWERGOLD:  Yes, your Honor.  I think that's appropriate.)  The Court then

ordered forfeiture as described above.

The Court did not order that the Government apply the forfeited cash to satisfy Mr.

Hawkins' restitution obligations.  That is apparent from a review of the sentencing record.  In reliance on the Government's earlier comments, the Court said the following regarding the forfeiture award:  "I understand that the United States will work to make that amount available to satisfy the defendant's restitution award."  Tr. at 71:9–11.  This is not an order for the Government to apply the funds to that purpose—it is a statement regarding the Court's understanding regarding the Government's intentions, as described by counsel for the United States.  The Government satisfied that expectation by taking the steps described in the Opposition.  Factually, Mr. Hawkins' motion is unsound.

The motion is also unsound because forfeiture and restitution are separate types of awards and serve different purposes.  Mr. Hawkins' motion shows that he may not appreciate the distinct roles of these two types of monetary awards included in his judgment.  "Criminal forfeiture is a form of punishment.  As such, it is distinct from restitution or other remedial actions, which are intended to return the victim and the perpetrator to the status quo that existed before the violation took place."  *United States v. Peters*, 732 F.3d 93, 101 (2d Cir. 2013); *see also Libretti v. United States*, 516 U.S. 29, 39 (1995) ("Congress conceived of forfeiture as punishment for the commission of various drug and racketeering crimes.").  Mr. Hawkins' restitution to his victims serves a different purpose (remediating a loss) than his forfeiture obligation (punishment).

The Court ordered that Mr. Hawkins forfeit the cash at issue here as part of his sentence.  No other claimants appeared for the cash, so it has been finally transferred to the United States, which has title in the cash claimed by Mr. Hawkins here.  In this motion, Mr. Hawkins is effectively challenging an aspect of the Court's sentence.  If Mr. Hawkins believed that the Court's order of forfeiture was inappropriate "his remedy laid in objecting to the Order before its issuance, a timely motion for reargument or an appeal.  None of those options was utilized."  *United States v. Wernick*, 148 F. Supp. 3d 271, 275 n.2 (E.D.N.Y. 2015), *aff'd*, 673 F. App'x 21 (2d Cir. 2016).

**III.   CONCLUSION**

In his reply, Mr. Hawkins expresses that he wants the Court to order the return of the cash

to him "so that he can give it to the victim's family, or in the alternative, that this court orders the

government to give the seized cash to directly to the victim['s] family."  Reply at 5.  While the

forfeited cash is not available to help Mr. Cameron's family, Mr. Hawkins has the opportunity to do

so by timely satisfying restitution obligations.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order

would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.

*See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 102 and to mail

a copy of this order to Mr. Hawkins.

SO ORDERED.

Dated:  January 28, 2021

_____
GREGORY H. WOODS
United States District Judge